## Barnhart *versus* Riddle.

The rule of law which forbids parol evidence to be received to contradict or vary a written agreement, has reference exclusively to the *terms* in which the writing is couched.

But evidence to explain the subject-matter of an agreement is essentially different from that which varies the terms in which the contract is conceived.

Our courts hold to the rule that plain and unequivocal terms shall not be altered by parol, but that such explanations of the subject-matter may be proved as shall give those terms the intended effect.

Where a party sold his interest in a mercantile firm to another by a written article of agreement at a stipulated price, the purchaser agreeing to pay the seller's share of the demands against the firm: in an action on the agreement by the seller for the purchase-money, parol evidence is admissible for the defendant, that before the contract was signed, a schedule of the debts of the firm was

[Barnhart *v.* Riddle.]

presented to him, with the knowledge and privity of the plaintiff, and that a large amount of debts owing by the firm were omitted in such schedule.

ERROR to the Common Pleas of *Centre county.*

This was an action of debt, by John H. Barnhart against William Riddle, on the following "Article of agreement, made and concluded this 29th day of November, 1848, between John H. Barnhart, of the first part, and William Riddle, of the second part. Said John H. Barnhart hath sold and delivered to William Riddle his entire interest of stock of goods, and also of the books of the store at Pleasant Gap, for the consideration of $800— said William Riddle doth agree to pay on the above amount $400, on the 1st day of May, 1849, and the balance on the 1st day of May, 1850, without interest. Said William Riddle also agreeth to pay the said John H. Barnhart's share of the demands against him, trading under the firm of M. Riddle & Co., and also to release him of his account in the above-mentioned books, and in the books of M. & W. Riddle, up to this date.

"Witness our hand and seal this 29th day of November, 1848.

WILLIAM RIDDLE,        [L. S.]
JOHN H. BARNHART, [L. S.]"

The defendant resisted a recovery on the agreement, and offered to prove by a witness that plaintiff requested defendant to purchase his interest in the books and accounts, and assume his share of the debts. That defendant required a statement to be furnished him, showing the amount coming to the firm of M. Riddle & Co. by the debtors, and also the amount the firm was indebted. That accordingly a statement was made out by deponent and the plaintiff, and J. S. Barnhart, the clerk, from the books, showing the state of the partnership, and who was indebted to the firm, and to whom the firm was indebted. That the statement was exhibited to William Riddle, the defendant, and represented to him by plaintiff, as containing a substantially true state of the concern (which statements are the same as exhibited to defendant, and which were given to him at the time), and that the defendant then went into the agreement now in evidence. They further propose to show that the statement was grossly inaccurate, and did not represent the true state of the concern by a large amount. That the debts exceeded, by $1500, the amount stated, which has been paid by defendant.

To the admission of this evidence the plaintiff objected:—1. That it contradicts and varies the written agreement. 2. That it was not such a fraudulent representation as would avoid the agreement. 3. That the special matter furnished in pursuance of notice does not correspond with the offer.

The court overruled the objections, admitted the evidence, and at the instance of plaintiff's counsel sealed a bill of exceptions.

The evidence showed that about the 1st of July, 1848, Barn-

hart sold to Riddle his share in the store of M. Riddle & Co., and
some notes due to Barnhart for the sum of $400, payable on the
1st of October, 1848. The inventory of the store amounted to
$1699.36, to which was to be added $84.08, money paid in Phila-
delphia, Barnhart desiring to sell out his interest in the accounts
of the firm of M. Riddle & Co. to the defendant. The defendant
proposed that a statement of the debts and credits of the firm
should be made out. This was done by Matthew Riddle, the
brother and partner of the defendant, and by J. Smith Barnhart,
a brother of the plaintiff, and a clerk in the store, under both
firms. The statement was presented to William Riddle in the pre-
sence of the plaintiff. Matthew Riddle testified that he said that
the statement was substantially correct, that he supposed there
would be some credits to be entered, but not of any material
amount. Smith Barnhart testified that there was considerable
negotiating between the parties, that finally William Riddle and
his brother Matthew went out of the store for some time, that
when they returned William proposed to pay Barnhart the
amount mentioned in the article, that Barnhart hesitated about
taking it, that Riddle said he would pay that amount, and run his
chance with the establishment, that something was said about the
statement, and that he told Riddle it was not a correct list, who
replied that he knew there were more debts against the concern
than were reported on the papers; and that they then entered into
the agreement.

Samuel Alexander, the subscribing witness to the agreement,
also a clerk in the store at the time, deposed that the statements
were made out shortly before the sale and with reference to it,
but could not say whether they were there at the time the agree-
ment was made.

The defendant then proved that the debts of the firm of M.
Riddle & Co. were about $1800 more than represented on the
statement; that about $1000 of this sum was for goods which had
been purchased in Philadelphia on credit; and which had not been
received at the time the inventory was taken and were not included
in it, but were afterwards received by M. & W. Riddle.

The court below (BURNSIDE, P. J.), after stating the facts, in-
structed the jury as follows:—

"There is no evidence that the plaintiff was privy to or assisted
in making out the statement; but if he, when he was present,
either said to the defendant that the statement was correct, or by
his silence assented to its correctness, then he is bound by it."

\*     \*     \*     \*     \*     \*     \*     \*

"If you find in the evidence, that there was fraud or misrepre-
sentation made use of by Barnhart, this amount, for which he is
liable as between him and Matthew, should be deducted from the
plaintiff's claim in this action.

[Barnhart v. Riddle.]

" But I do not understand the defendant's counsel to charge the plaintiff with fraud or misrepresentation. If it was a mutual mistake, it still can be credited. Was there this mistake in making out the statement? The evidence of it must be clear, precise, and indubitable, for it is only in such cases that the law will relieve a party against an instrument so solemn as this one is, on which a recovery is sought in this action.

" Should you find the plaintiff to be entitled to the whole consideration mentioned in the agreement, you will deduct from it $30, the value of the goods which Barnhart promised to account for, and allow interest from the times specified for the payment in the article. On the other hand, if you believe either by design or accident, the defendant was deceived as to the amount of the indebtedness of M. Riddle & Co., then you can defalk for such mistake, and render a verdict for the balance, if you should find any to be due, with interest."

The jury found for the plaintiff $5.50.

The plaintiff sued out this writ, and assigned here that the court erred in admitting the parol evidence, and in their charge to the jury.

*Curtin* and *Blanchard*, for plaintiff in error.—It is well settled that parol contemporaneous evidence is inadmissible for the purpose of contradicting or varying the terms of a written instrument: Christ v. Dieffenbach, 1 *S. & R.* 464; Stubs v. Stubs, 3 *Barr* 255. The agreement is plain and unambiguous. The fraud or mistake which will set aside or reform a written agreement, must be clear and precise, and must be of what occurred at the execution of the agreement; and it is error to submit it to the jury upon slight or trivial parol evidence : Stine v. Shirk, 1 *W. & S.* 195; Irwin v. Shoemaker, 8 *W. & S.* 176; Sennett v. Johnston, 9 *Barr* 355; Farmers' and Drovers' Bank v. Fordyce, 1 *Barr* 456. It should not prevail unless it amounts to the strongest kind of proof: 3 *Stark.* 1019. The misrepresentation or mistake must be such as will amount to a contract on the part of the party to be affected by the evidence : Zentmyer's Executors v. Mittower, 5 *Barr* 403–409–10.

There was no evidence in the cause which could be submitted to the jury that the plaintiff was privy to the statement, or did anything to mislead the defendant. To entitle the defendant to rescind the contract, the plaintiff must be put in the same situation he was before the contract was made : Espy v. Anderson, 2 *Harris* 308.

*McAllister* and *Hale* cited and relied upon the cases of Miles v. Stevens, 3 *Barr* 37 ; and Case v. Cushman, 3 *W. & S.* 547.

[Barnhart *v.* Riddle.]

The opinion of the court was delivered by

WOODWARD, J.—Sued for the money which by the agreement of 29th November, 1848, he had bound himself to pay, the defendant offered and was permitted to show that the agreement was founded on a statement of the debts of the firm which was prepared and shown to him with the knowledge and sanction of the plaintiff, and which, through fraud or mistake, was grossly inaccurate. Though represented as containing a substantially true state of the concern, the schedule omitted an aggregate of indebtedness greatly exceeding the whole purchase-money to be paid. The evidence of these facts, believed by the jury, was of course fatal to the plaintiff's action. The objection to it was in the court below and is in this court, that it contradicted and varied the written agreement, and that salutary rule of law is invoked which forbids parol evidence to be employed for such a purpose.

This rule of law is sometimes misconceived, and its application becomes often very embarrassing in connexion with that principle of equity constantly recognised by the courts, that fraud or mistake is ground on which a writing may be reformed. Let us see if both principles cannot be so stated as to exhibit their coherence and harmony.

The one is a rule of law, the other of equity. But the legal rule has less scope than the argument in this case, and the use that is commonly made of it, would seem to imply. It is a rule that has reference exclusively to the *terms* in which the writing is couched. When parties have deliberately put their engagements into writing, and no ambiguity arises out of the terms employed, you shall not add to, contradict, or vary the language mutually chosen as most fit to express the intention of their minds. What if the parol evidence prove, never so clearly, that they used such and such words in making their bargain; the writing signed, if it contain not those words, is final and conclusive evidence that they were set aside in favour of the other expressions that *are* found in the written instrument. And hence this rule of law is only a conclusion of reason, that that medium of proof is most trustworthy which is most precise, deliberate, and unchangeable.

But evidence to explain the *subject-matter* of an agreement, is essentially different from that which varies the terms in which the contract is conceived. It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the writing. Thus in the agreement on which this action is founded, Riddle binds himself to pay Barnhart's share of the "*demands*" against him as a member of the firm of M. Riddle & Co., but there is no specification of the demands, either as to character or amount. Now in this case, as in many others, it is obvious we must resort to parol evidence in explanation of

the scope and object of the agreement, if we would cause it to have the effect the parties intended it should have.

"Demands:" what demands, how many, and to what amount? Parol evidence, or proof outside of the agreement, can alone inform the judicial conscience. But if the evidence shows, that the parties contracted with a schedule of demands before them, it is reasonable to infer that they meant the covenant to pay should be construed in reference to that schedule; that their agreement, indeed, was based upon the prepared statement.

And such evidence is not obnoxious to the rule that excludes parol proof to vary written instruments, any more than the evidence in Doe *v.* Burt, 1 *Term Rep.* 701, where a lease described the demised premises as a messuage, consisting of "one room on the ground-floor with a cellar thereunder." The question was, whether the cellar passed to the tenant, and parol evidence was received that at the time the lease was made, the cellar in question was in the occupation of B., another tenant, and therefore it could not have been the intention that it should pass under this lease. So also in our own case of Bertsch *v.* The Lehigh Coal and Navigation Company, 4 *R.* 130, in a proceeding for damages done to the plaintiff's land, he was met by his written agreement granting the right of passage through his land, but was permitted to prove that at the time the agreement was entered into, the line or route of defendant's canal was designated by stakes set up through his land, and that the written agreement was made with reference to this line, and was not intended to apply to that to which the route was afterwards changed. Many other cases might be cited from the books to mark the distinction, too often lost sight of by counsel in the zeal of an argument, between evidence to alter the language of a written instrument, and evidence to define the position of the parties, and the nature and condition of the subject contracted about. So long as parties call on courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end courts take the language employed and apply it to the surrounding circumstances, exactly as they believe the parties applied it. In other words, they hold to the rule that plain and unequivocal terms shall not be altered by parol, but that such explanations of the subject-matter may be proved, as shall give those terms the intended effect.

And out of this distinction grows that branch of equity jurisdiction which claims, somewhat arrogantly, the exclusive right to relieve against fraud and mistake. Whether we say that equity relieves against a contract founded in fraud or mistake, or that the law refuses to enforce such a contract, we mean the

[Barnhart *v.* Riddle.]

same thing, that justice is to be done, and that the fraud or mistake may be proved by parol.

The evidence in the bill of exception, tended very strongly to prove a case for equitable relief. Riddle agreed to buy out Barnhart's interest in a certain mercantile firm—to pay him $800, and to pay his share of the demands against the firm. The statement of those demands which was made out was properly admitted in evidence on the principles already adverted to, and then it was shown to the satisfaction of the jury that the demands exceeded the amount contained in the statement by a sum nearly or quite double the consideration agreed to be paid. When it is considered that the firm goods for which Riddle was to pay $800, would be liable for the full amount of the demands against the retiring partner, it is impossible to conceive that he meant to give the above price for being put into such a liability, or that Barnhart expected to receive it. Riddle was either overreached, grossly defrauded by false representations, or else both parties were egregiously mistaken as to the amount of Barnhart's indebtedness. The latter is the more charitable supposition, and just as efficacious as a ground of defence. Equity would relieve against a covenant to pay founded in so gross a mistake—the law will not enforce it. And the evidence upon which equity would proceed, or the law refuse to proceed, is such necessary and natural proof as that in the bill of exceptions, which explains fully what the parties treated about without contradicting anything they have set down in their agreement.

There is nothing else in this case. The evidence properly admitted was properly submitted to the jury, and their verdict was an end of the case.

The judgment is affirmed.