## Graver *versus* Scott.

1. A contract was for the sale of a piece of land, "also a tract of coal property;" for the land the vendee "agrees to pay $2500, $2000 to be paid on delivery of the deeds and possession of the property; * * * the coal is to be paid for at the rate of half a cent per bushel, payment to be made for the coal at the end of each year; vendee agrees to use at least $1000 worth of coal at half a cent a bushel each year." *Held* on its face to be a divisible contract.

2. The vendor being unable on demand to deliver a deed and possession of the property the vendee did not take possession of the coal tract nor mine coal; at the end of the year the vendor sued for the $1000. *Held*, the suit being in affirmance of the contract, that parol evidence was admissible that the land was necessary for the vendee's enjoyment of the coal and that it was the understanding at its execution that the contract was entire.

3. In absence of explanatory proof, on a sale in separate lots, if title to a portion fails, equity will compel the vendee to take the lots to which title can be made.

4. If the part of a contract of sale that has failed be so essential to the residue that it cannot be reasonably supposed the purchase would have been made without it, the contract is dissolved *in toto*.

5. A verbal promise at the making of a written contract, if made to obtain its execution, may be given in evidence.

6. An action by the vendor for the purchase-money under a contract is in affirmance of it, and is subject to the rules applicable to a bill for specific performance.

7. McClurg *v.* Price, 9 P. F. Smith 420, distinguished. Nicol *v.* Carr, 11 Casey 381, followed.

November — 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1875, No. 113.

This was an action of debt, brought October 3d 1874, by Alexander Scott against Michael Graver.

The plaintiff's claim was for coal which the defendant was to mine from plaintiff's property and pay for, under the following agreement between them :—

"Agreement made this 13th day of September 1873, at Pittsburg.

"This agreement witnesseth, that Alexander Scott, of Alle-

[Graver *v.* Scott.]

gheny county, of first part, agrees to sell to M. Graver, of Allegheny city, of second part, the following described property for the amount and on the terms hereinafter mentioned :—

" A piece or parcel of ground, known as the ice-pond, situated in Allegheny, Butler and Armstrong counties, at the junction of Buffalo creek and Allegheny river, bounded by Buffalo creek, Allegheny river and West Penn Railroad, containing five and a quarter acres, more or less; also a tract of coal property, known as the Miller's heirs property, said to contain about three acres surface and about seventeen acres of coal.

" The terms of purchase are these : For the ground known as the pond property, party of the second part agrees to pay twenty-five hundred dollars; two thousand dollars to be paid on delivery of the deeds and possession of the property ; the other five hundred dollars to be paid at the end of three years.

" The coal is to be paid for at the rate of a half a cent per bushel, according to actual measurement, as dug and delivered; payment for the coal to be made at the end of each year. Party of second part agrees to use at least one thousand dollars' worth of coal at half cent per bushel each year."

The affidavit of defence was :—

" This affiant saith, that it is true that the piece or parcel of ground known as the ice-pond property, and the tract of coal mentioned in said agreement, are not contiguous, but in fact they bear such relation to each other that this affiant would not have bought the coal property, under any circumstances, without the said pond property; and affiant saith that the plaintiff insisted that this affiant purchase the said coal property in connection with the said ice-pond property, and the parties dealt in respect to the said properties as a unit; that the said coal property would be worthless to the defendant without the ice-pond property. Affiant further saith, that the plaintiff hath never been able, and is not now able, to make title to affiant for the ice-pond property, nor has he ever been able, nor is he now able to give this affiant possession thereof. That on the 21st of August 1874, this affiant caused to be tendered to the plaintiff the two thousand dollars purchase-money mentioned in said agreement, and demanded that the plaintiff execute to the affiant proper deeds, and give him possession of said property. But the plaintiff neglected and refused to comply with said demand, and still neglects and refuses. That this affiant was never in possession of either of said properties, nor did he ever mine any coal from the said coal property. Affiant saith, that the plaintiff hath violated his contract in every respect, and that he has never even tendered affiant a deed for the coal."

The case was tried March 16th 1875, before Kirkpatrick, J.

The plaintiff testified that defendant did not take any coal out from September 13th 1873 until September 13th 1874 ; he

made a demand on the 24th of September 1874, from defendant, for payment of $1000 under the contract; defendant did not pay.

The defendant, under objection by plaintiff, testified that he purchased the ice-pond for the purpose of erecting an oil refinery on it; plaintiff said he wanted the pond property to sell the coal property; they are about 400 or 500 yards distant from each other; defendant did not want the coal property, and would not have purchased it without the pond property; it was not essential for the purpose for which he desired the pond property; it was of no value to him without the pond property. Plaintiff never gave him possession of the property; defendant was anxious to have it, because his purchase was based on certain contingencies that he would get possession in a short time. He made a tender of $2000 to plaintiff and demanded a deed; plaintiff never tendered him a deed for any of the property. One Tarr was living on the pond property at the time; he had claimed to have a title to it; he was in possession until after this suit was brought.

There was other evidence in corroboration of defendant's testimony and by the plaintiff in answer to it.

The court charged:—

* * * "In the trial of this cause I received with some doubt testimony as to what transpired at the time that this compact was being entered into. I did it for the purpose of enabling the jury to determine whether this contract was an entire contract or was a separable contract. Had I been determining the contract upon the paper alone, I might have said, as it was my duty to construe the contract, that it was a separable and divisible contract. I say now to you, upon reflection, that I think that testimony was improperly received. I think that this contract is a separable and divisible contract; that the right to recover has no reference nor allusion to the ice-pond property whatever; that the fact that Tarr was in possession, and that Mr. Scott could not make a deed for this property, is no defence to the right to recover for the coal property for the $1000; and I so instruct you, and that under all the evidence in this case your verdict must be for the plaintiff, debt, interest and costs. * * * We say, as a matter of law, that there is no defence."

The verdict was for the plaintiff for $1030.

The defendant took a writ of error and assigned for error:—

1–3. The charge of the court.

4. In not charging that the plaintiff could not maintain the action without a previous tender of a deed for the coal property.

*M. W. Acheson*, for plaintiff in error.—The action was an equitable proceeding to enforce specific performance; the defendant, therefore, can avail himself of any equitable defence: Nicol *v.* Carr,

[Graver v. Scott.]

11 Casey 381. Conceding that the agreement on its face is a divisible contract, the parol evidence shows that it would be inequitable to enforce the performance of but a part: Freetly v. Barnhart, 1 P. F. Smith 279; Stoddart v. Smith, 5 Binn. 355; 1 Sugden on Vendors 476, et seq.; pl. 1–24, p. 484, note g; Gibson v. Spurrier, Peak Ad. Cases 49. The parol evidence in this case did not contradict the agreement and was admissible: Barnhart v. Riddle, 5 Casey 92; Miller v. Fichthorn, 7 Id. 252; Chalfant v. Williams, 11 Id. 212; Powelton Coal Co. v. McShain, 25 P. F. Smith 238. The plaintiff was bound to tender a deed before suit: Withers v. Atkinson, 1 Watts 236; Smith v. Webster, 2 Id. 478.

*W. S. Purviance* and *S. A. Purviance*, for defendant in error.— The agreement is as if a contract had been made for each property by a distinct writing; in such case the contract would have been divisible: Roberts v. Beatty, 2 Penna. R. 69. If the part to be performed by one party consists of distinct items and the price to be paid by the other is apportioned to each item, the contract is severable: 2 Parsons on Contr. 29, 31; McClurg v. Price, 9 P. F. Smith 420; Lucesco Oil Co. v. Brewer, 16 Id. 351; Coffman v. Hampton, 2 W. & S. 377; Barclay v. Tracy, 5 Id. 45; Tompkins v. Haas, 2 Barr 74. As to the admission of the parol evidence they cited: Balt. & Phila. S. B. Co. v. Brown, 4 P. F. Smith 81.

Mr. Justice Woodward delivered the opinion of the court, January 6th 1876.

Upon its face, the instrument executed by these parties on the 13th of September 1843, created two separate and independent contracts. The ice-pond lot was sold for $2500, in two stipulated payments. The consideration for the coal property was to be the payment at the end of each year of half a cent per bushel for all the coal dug and delivered, the purchaser, the defendant below, agreeing to use $1000 worth of coal each year at the specified price. On the trial the ground was taken on the part of the defence, that while the agreement was separable and divisible in its provisions, yet in fact, in view of the understanding of the parties, it was an entire contract, and was induced by a single substantial consideration. Evidence was given to prove that the motive of the defendant was to obtain the title to the ice-pond lot for the erection of an oil refinery; that he did not want the coal lot, and under no circumstances would have purchased it by itself, but was compelled to take it, as the plaintiff insisted on selling both properties together; and that the subjects-matter of the agreement were treated as an entirety throughout the negotiations. It was shown also that one Tarr was in possession of the ice-pond property when the contracts were

made, and was not dispossessed until December 1874, two months after this suit was brought. In the charge of the court, the jury were instructed that the evidence had been improperly received, and should be disregarded; that the rights of the parties were governed by the agreement; and that as a matter of law no defence had been shown to plaintiff's claim.

In the absence of any proof of explanatory facts, when property is sold by a single contract in separate lots, and a title to a portion of them fails, equity will compel the purchasers to take the lots to which title can be made: 1 Sugden on Vendors 291. Thus, in Poole *v.* Shergold, 1 Cox 273, a man became the purchaser of several lots of an estate, the title to two of which failed. Upon the master's report Lord Kenyon said he must take it for granted that these two lots were not complicated with the others, so as to entitle the purchaser to resist the whole, and therefore decreed specific performance *pro tanto*. But it was said in the same case, that if a title cannot be made to a lot which is complicated with the rest, the purchaser will not be compelled to accept the rest. And Lord Kenyon said that if a purchase was made of a mansion house in one lot, and of farms, &c., in others, and no title could be made to the mansion house, it would be a ground to rescind the whole contract. In a previous case, before Sir Thomas Sewell, Master of the Rolls, a man who had contracted for the purchase of a house and wharf was compelled to take the house, although he could not get the wharf, and although it appeared that his object was to carry on his business at the wharf. This was declared by Lord Kenyon to be a determination contrary to all justice and reason; and in a note to 1 Sugden on Vendors 294, it is stated that " this case has been frequently disapproved, and would not have been so decided at this day." In Stoddart *v.* Smith, 5 Binney 355, it was said by Tilghman, C. J., that " there are cases where failure to part ought to dissolve the whole contract. * * * The principle is this, that where the part lost appears to be so essential to the residue that it cannot be reasonably supposed the purchase would have been made without it, the contract is dissolved in toto." In that case the contract was enforced as to the residue for which title could be made, but the reasons given were, that the five lots lost were not adjoining or particularly connected with the others; and that " there was no evidence of their being in any way essential to the use or full enjoyment of the residue." In Freetly *v.* Barnhart, 1 P. F. Smith 279, which was a bill in equity to enforce the specific execution of a contract, the plaintiff had agreed to sell to the defendant three leases of land in West Virginia, in consideration for which the defendant was to convey to the plaintiff eight acres of land in Venango county, Pennsylvania, and become a member of the Cunningham Oil Company. On the hearing there was evidence of the invalidity of at least one of the leases. It was

[Graver v. Scott.]

held that " the lease of the Duland tract was clearly defective to the extent of one-third, the party entitled to that being *non compos mentis* when it was made. This, of itself, would justify a refusal to decree in such a case as this." The action here is in affirmance of the contract, and Nicol v. Carr, 11 Casey 381, shows it to be subject to the rule that would apply to a bill for specific performance. So far as the evidence indicates the use to which the coal property was to be devoted, it would appear that fuel was to be obtained from it for the purposes of the oil refinery on the icepond lot, which it was the design of the defendant to erect. How the properties were to be connected, and how and to what extent the enjoyment of the one was dependent on the possession of the other, the jury alone could have determined.

In support of the ruling of the court below, the counsel for the plaintiff have relied in their argument on the doctrine asserted in 2 Parsons on Contracts 29–31, that " if the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * But if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." The doctrine is stated with sufficient accuracy to meet a case whose particular circumstances warrant its adoption, but the defect of the statement, as quoted by counsel, consists in its universality. While the reduction to the limits of a maxim of the great body of principles that make up an entire branch of our legal system, might be convenient, it would be exceedingly unsafe. McClurg v. Price, 9 P. F. Smith 420, was cited as an instance where this rule was adopted without qualification. All that was done there was to settle the law that bore on the facts which the case presented. It was not designed to unsettle or disturb the authority of Obermyer v. Nichols, 6 Binney 159, and of other well considered precedents, containing such elements as proof of substantial but defective performance, proof of a failure to perform capable of compensation in damages, or proof of other peculiar facts requiring the application of peculiar principles. The Lucesco Oil Company v. Brewer, 16 P. F. Smith 351, was also cited. The contract there was manifestly severable, and was within the general doctrine of Parsons on Contracts. In neither McClurg v. Price, nor the Oil Co. v. Brewer, were there any circumstances proved to show such relations of parties, such situation of property, or the existence of such exceptional conditions as to require the intervention of a jury to promote an equity, or avert an injustice, or prevent a fraud.

The parol evidence was competent, and was properly received by the court. It was said in Barnhart v. Riddle, 5 Casey 92,

" that many cases might be cited from the books to mark the distinction, too often lost sight of by counsel, in the zeal of an argument, between evidence to alter the language of a written instrument and evidence to define the position of the parties, and the nature and condition of the subject of the contract. So long as parties call on courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end courts take the language employed, and apply it to the surrounding circumstances exactly as they believe the parties applied it:" Miller *v.* Fichthorn, 7 Casey 252, is an authority to the same general effect. In Pennsylvania, in the words of Lowrie, C. J., "in consequence of our liberal allowance of set-offs, defalcations and equitable defences, parol evidence is often admissible in an action on a written contract, in order to extend the field of inquiry to the whole transaction of which the particular contract forming the basis of the action constitutes a part." In an action on a contract for the sale of a colliery for a gross sum of money, to be paid at a certain rate per ton on each ton of coal mined therefrom, parol evidence is admissible to prove that at the time of the execution of the contract, it was agreed between the parties that the vendors should not be bound to mine the necessary amount of coal, and that the vendee should take the risk of their doing so : Chalfant *v.* Williams, 11 Casey 212. The English rule that parol evidence is inadmissible to vary the legal operation of an instrument is not the law of this state : Id. A verbal promise by one of the parties at the making of a written contract, if it was used to obtain the· execution of the writing, may be given in evidence. "This rule is put upon the ground that the attempt afterwards to take advantage of the omission from the contract of such promise is a fraud upon the party who was induced to execute it upon such promise:" Per Gordon, J., in Powelton Coal Company *v.* McShain, 25 P. F. Smith 238. Having been received, the evidence should not have been withdrawn. It had a legitimate bearing on the questions which the defendants had legitimately raised. With the other proofs it should have been submitted to the jury.

The fourth error is assigned to the failure of the court to charge that the plaintiff could not maintain this action without a previous tender of a deed for the coal property. While the property included three acres of surface, it seems obvious from the whole· agreement, in the absence of explanatory testimony, that the parties treated it not as land but a mining right. The only consideration to be paid was half a cent per bushel for the coal that should be dug and delivered. No date was specified for the execution of the deed for even the ice-pond lot. For that, $2000 were to be paid " on the execution of the deeds and possession of the

[Graver *v.* Scott.]

property." The contract contained no provision to secure the consideration for the coal lot. With such knowledge of the facts as the record affords, the failure to tender a deed cannot be held fatal to the plaintiff's action. Such a deed in the ordinary form would scarcely meet the exigencies of a contract which partakes more of the nature of a mining lease than of a sale of land. The difficulties in the way of a conveyance do not appear insurmountable. The property could be made subject to the consideration in the very words the parties employed, although, in the absence of stipulations, this could only be done by a fresh agreement, or by the terms of a conditional verdict.

Judgment reversed, and a *venire facias de novo* awarded.