# William Wright *v.* The Monongahela Natural Gas Company, Appellant.

*Contract—Ambiguity—Construction by parties—Question for jury.*

The parties to a contract, where there may be some ambiguity, always have a right and can put their own construction upon their own lease, and it is a proper question to submit to the jury whether both parties agree to such a mutual construction, and the jury so finding should adopt such construction as its own.

*Evidence—Parol evidence to define position of parties.*

It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to 'the subject-matter, and the distinction is' too often lost sight of between evidence to alter the language of a written instrument, which is inadmissible, and evidence to define the position of the parties and the nature and condition of the subject contracted, about which evidence is admissible.

Oral evidence will be received which does not contradict the writing, but only makes clear by the acts of the parties how they interpret it. A lessee defended against a lease on the ground that it was so unintelligible and so ambiguous as to be void. *Held,* That evidence was properly admissible of the acts of the party as tending to show a mutual construction acquiesced in by both parties.

*Contracts—Construction—Reasonable time.*

When parties agree that a thing shall be done and no time is specified in which it is to be completed, the law presumes that a reasonable time will be given considering the nature of the business.

Argued April 21, 1896.    Appeal, No. 80, April T., 1896, by defendant, from judgment of C. P. Washington Co., Aug. T., 1893, No. 96, on verdict for plaintiff.    Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on lease.    Before MCILVAINE, P. J.    Verdict for plaintiff for $159.10.

The following facts were stated in the opinion of the Superior Court.

On March 12, 1890, the plaintiff leased his farm, containing one hundred and eight acres to James B. Oliver, for the purpose and with the exclusive right of drilling and operating for

petroleum and gas. No well was drilled, but the rental was paid for two quarters which extended the lease until September 12, 1890, when it was declared forfeited by the lessor for nonpayment of rent. On October 11, 1890, a new writing dated September 12, 1890, was executed and a quarter rent paid from the earlier date, to cover the lost ground from the old lease as stated by defendant's representative. This lease was assigned to the defendant company and the rent under it was paid to the plaintiff as it became due, to date of June 12, 1892. Suit was instituted to recover the rent to date of June 26, 1893, and a verdict returned for $159.10.

Appellant contends that the covenant in the second lease, "it is further agreed that the party of the second part shall pay to the party of the first part for further delay an annual rental of two dollars per acre on the said premises from the time above specified for drilling a well until such well shall be drilled" is unintelligible, and so ambiguous as to render the lease void.

In addition to the facts as stated above by the Superior Court the record showed the following offer of evidence:

William Wright, the plaintiff, being on the stand, and having testified there was a lease upon his farm in 1890 for oil and gas purposes, and having identified exhibit A 2 as a copy of that lease, it is now proposed to ask him what, if anything, was done by the lessee or holder of the lease in the way of operating for oil and gas under that lease, and if no operations were had whether the rental was paid, and if so, to what time; this to be followed by evidence that the company paid the rental under the lease until September, 1890, when they made default and the lessee declared the lease forfeited; this to be followed by evidence that an agent of the company then came to the witness and secured from him another lease on his land, dating the lease back to connect it with the time when the default was made in the first lease; and that to be followed by evidence that the company thereupon paid the rental in default on the first lease, and continued to pay rental under the second lease until default was made in June, 1892; this to connect the two leases together to show that they form part of one transaction, and to explain to the court and jury the language in the lease upon which suit is brought.

Objected to as irrelevant and incompetent for the reason that no acts done by the company under the first lease can be used as shedding any light upon the proper construction of the language used in the second lease; and second, as irrelevant and incompetent generally. Objection overruled. Exception to defendant. [1]

The court charged the jury, inter alia, as follows:

We think, however, that, taking the whole lease together and the subject-matter of the contract, and what the parties contracting were presumed to know concerning the business that they were contracting about, this lease means this: That the second party was to pay $2.00 an acre for the further or unnecessary delay—delay further than was necessary—in drilling a well, and the time from which that was to be estimated was the time above specified, September 12, 1890. [2]

\*     \*     \*     \*     \*     \*     \*     \*

Now, the plaintiff claims that Mr. Huffman, as the agent of the second party to this lease, paid this first quarter's rental, and says that the delay that is referred to here is the delay in not drilling a well upon the first lease, and that the sight draft drawn by the agent of the company was honored by them, and they afterwards continued to pay rental upon a lease that is not in suit for a period of about three years; that is, they paid the rental up to June 12, 1892. Now, if you are satisfied from the evidence that that was the understanding of these parties, that was the construction they put upon this covenant, then that will be binding upon both of them and the plaintiff will be entitled to recover the rental that is admittedly overdue and unpaid, from June 12, 1892, up until the time the suit was brought. [3]

*Errors assigned* were, (1) admission of testimony of the plaintiff, reciting same; (2, 3) error in portions of the charge, reciting same; (4) refusal of binding instructions for defendant.

*R. W. Irwin*, for appellant.—The admission of evidence to explain ambiguities is confined to such ambiguities as are latent: 2 Wharton on Evidence, sec. 956 and 957; Saunderson v. Piper, 5 Bing. N. C. 425; Griffith v. Furry, 30 Ill. 251; McDermott v. Ins. Co., 3 S. & R. 606; Clarke v. Lancaster, 36 Md. 196.

222 WRIGHT *v.* GAS CO., Appellant.

Arguments—Opinion of the Court. [2 Super. Ct.

It is only where the contract is susceptible of more than one reasonable interpretation that parol evidence, including the acts of the parties and the construction which they seem to have placed upon the contract by their acts, is admissible to aid in the interpretation of the contract: Garard v. Mononga-hela College, 114 Pa. 337; Ins. Co. v. Dell, 35 Md. 89; Railroad Co. v. Trimble, 10 Wall. 367; Fogg v. Ins. Co., 10 Cush. 337; Topliff v. Topliff, 122 U. S. 121.

*J. H. Murdoch,* for appellee.— "Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract:" Callen v. Hilty, 14 Pa. 288; Church v. Clime, 116 Pa. 150; 1 Greenleaf on Evidence, sec. 287; Patterson v. Graham, 164 Pa. 234; Berridge v. Glassey, 112 Pa. 442. "The acts of the parties performed under a written contract will be given effect to by the court as placing a construction upon the contract: Lyles v. Lescher, 7 West. Rep. 51;" 3 Am. & Eng. Ency. of Law, 868; Pratt v. Campbell, 24 Pa. 186. Covenants, like all other contracts, are to be construed according to the intention of the parties as nearly as the words will permit; and there is no surer guide to the understanding and intentions of the parties, when words are equivocal, than their acts and declarations under the agreement, called commonly its contemporaneous construction: Coal and Nav. Co. v. Harlan, 27 Pa. 439; Topliff v. Topliff, 122 U. S. 121; Chicago v. Sheldon, 9 Wall. 54.

The old common law rule relied upon by the appellant's counsel finds its strongest support in this state in the case of McDermott v. Insurance Co., 3 S. & R. 604; but that that is no longer the law in Pennsylvania is clearly established, among others, by the following cases: Chalfant v. Williams, 35 Pa. 212; Miller v. Fichthorn, 31 Pa. 252; Steamboat Co. v. Brown, 54 Pa. 77; Graver v. Scott, 80 Pa. 93; Kostenbader v. Peters, 80 Pa. 438; Smith v. Insurance Co., 89 Pa. 287; Selden v. Williams, 9 Watts, 9; 1 Am. & Eng. Ency. of Law, 528, note.

OPINION BY ORLADY, J., July 16, 1896 (after stating the facts as recited in the above statement of facts):

Inspection of the second lease shows that the parties deliber-

ately intended to effect a contract by a writing in a legal form. It was signed and sealed by the lessor in presence of the person acting for the lessee and acknowledged before a justice of the peace. A printed form was used and the blanks were filled in to express the intention of the parties. The evidence oral and in writing shows that until June 12, 1892, the parties interested acted upon the lease by the payment of the rent due thereunder as if they had so framed it as to express their understanding. The jury was instructed, " We think that taking the whole lease together and the subject-matter of the contract, and what the parties contracting were presumed to know concerning the business that they were contracting about, this lease means this : that the second party was to pay $2.00 an acre for the further and unnecessary delay—delay further than was necessary in drilling a well, and the time from which that was to be estimated was the time above specified, September 12, 1890." Where parties agree that a thing shall be done and no length of time is specified in which it is to be completed, the law presumes that a reasonable time will be given, considering the nature of the business. The parties to the contract where there may be some ambiguity, always have a right and can put their own construction upon their own lease ; and if it appears to the jury that that construction was mutual and that both parties agreed that it was the proper construction, although it might not be the construction the court would adopt on an inspection of the written lease, still the construction of the parties is the construction the jury should take in a suit brought upon the contract.

The words used in the contract were not unmeaning. They had special reference to the subject-matter, and the only question of doubt was as to the application of the words, " time above specified for drilling a well." The ambiguity was not in the minds of the parties to the contract. They fully understood it ; had executed and abandoned a prior contract in relation to the same use of the same land, and had again met, contracted and acted to their mutual understanding. It was competent under the present lease to show these facts by parol as the paper was capable of being construed in an intelligible way only under their treatment of it.

In Patterson v. Graham, 164 Pa. 234, it is said, " no time was

expressly fixed in the agreement within which the timber was to be cut and removed. But the intention of the parties may be ascertained from the other stipulations in the agreement and facts dehors the agreement, such as the situation of the parties, and the circumstances surrounding them at the time they entered into it."

Evidence of payment of the rent under the second lease was received without objection, and the court properly submitted to the jury the effect to be given to these acts of defendant in aid of the construction of the doubtful clause : Pratt v. Campbell, 24 Pa. 186 ; Whart. on Evidence, secs. 941, and 971.

The oral evidence received did not contradict the writing, but only made clear by the acts of the parties how they had interpreted it : Steamboat Co. v. Brown, 54 Pa. 77.

It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the writing. Many cases might be cited from the books to mark the distinction, too often lost sight of, between evidence to alter the language of a written instrument and evidence to define the position of the parties, and the nature and condition of the subject contracted about. So long as parties call upon courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end, courts take the language employed and apply it to the surrounding circumstances exactly as they believe the parties applied it : Barnhart v. Riddle, 29 Pa. 92 ; Graver v. Scott, 80 Pa. 88 ; Irvin v. Irvin, 142 Pa. 271.

The case was fairly tried in the court below. The assignments of error are not sustained and the judgment is affirmed.