# Trexler, Appellant, v. Reynolds.

*Contract—Construction—Written agreement.*

1. Where a court is called upon to construe a particular clause of a written instrument, it will take into consideration the situation and relation of the parties, and all the other provisions of the instrument, and will apply the language used in the writing to the surrounding circumstances exactly as it believes the parties applied it.

2. In construing a written instrument the courts will, if the construction is doubtful, take into consideration the interpretation which the parties themselves put upon it.

3. A partnership consisting of three persons owned land, and farmed and dealt in live stock. Two members of the firm and a third person constituted a limited partnership which leased a portion of the partnership land for lumbering purposes. The limited partnership owned a sawmill and other necessary buildings located on the land. It also owned horses and wagons and other property necessary for its business, and a large number of staves piled at its mill. At a time when such were the conditions, the three partners of the general partnership entered into an agreement in the preamble of which they styled themselves as partners trading under the firm name. The agreement recited that certain differences had arisen between the members of the partnership and that they agreed to dissolve the same. It provided that the two partners who were interested in the limited partnership should sell their undivided half interest in the land to the other partner "and all their right, title, interest in and to all the personal property upon the said lands, and all their right, title and interest in and to all other personal property owned by the said firm of whatsoever character or wheresoever situated." The agreement also excepted from its operation the stave mill and the buildings in connection with it, and it was also provided that the manufacture of staves would continue until a certain date specified upon a royalty, but that after such date operations should cease, and the mill be removed. The agreement was fully executed in so far as it related to the land and the cattle and farming implements of the general partnership. Subsequently the partner to whom the half interest in the land was sold claimed the staves and the horses and wagons and other property which had been in the possession of the limited partnership. *Held,* that under a proper construction of the agreement, considering the circumstances and the situation of the parties, such a claim could not be sustained.

Argued Nov. 18, 1909. Appeal, No. 97, Oct. T., 1909,

by plaintiffs, from judgment of C. P. Huntingdon Co.,
Dec. T., 1905, No. 172, on verdict for defendant in case
of J. F. Trexler and J. L. Trexler v. H. P. Reynolds. Be-
fore RICE, P. J., HENDERSON, MORRISON, ORLADY,
HEAD, BEAVER and PORTER, JJ. Reversed.

Feigned issue to determine the ownership of certain
corporate property.

The facts are stated in the opinion of the Superior
Court.

Verdict for defendant. Plaintiffs appealed.

*Errors assigned* were (1–91) various rulings on evidence
and instructions.

*W. M. Henderson*, with him *H. H. Waite*, for appel-
lants.—One of the rules governing the interpretation of
contracts is that an agreement ought to receive that con-
struction which will best effectuate the intention of the
parties. This intention must be collected not from de-
tached portions of the agreement, but from the whole:
Ellmaker v. Ellmaker, 4 Watts, 89; Miller v. Fichthorn,
31 Pa. 252; Williamson v. McClure, 37 Pa. 402; Lehigh
Coal, etc., Co. v. Harlan, 27 Pa. 429.

The interpretation placed upon the agreement of Jan-
uary 25, 1905, by the parties and the acts and declara-
tions of the appellee at the execution of agreement and
subsequent thereto are to be considered: Cummins v.
Ins. Co., 197 Pa. 61; Easton Power Co. v. Ry. Supply
Co., 22 Pa. Superior Ct. 538; Kostenbader v. Peters, 80
Pa. 438; Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429;
People's Nat. Gas Co. v. Wire Co., 155 Pa. 22; Kane v.
Ins. Co., 199 Pa. 205; Pratt v. Campbell, 24 Pa. 184;
Berridge v. Glassey, 112 Pa. 442; Miner's App., 61 Pa.
283.

*Thos. F. Bailey*, with him *Saml. I. Spyker* and *Chas. C.
Brewster*, for appellee.—It is the duty of the court to in-

terpret a contract and of the jury to determine whether it is established by proof: Folsom v. Cook, 115 Pa. 539; Carson v. Hosiery Co., 15 Pa. Superior Ct. 476.

OPINION BY HEAD, J., July 20, 1910:

Although the record before us is somewhat voluminous and the assignments of error numerous, the controlling question in the case lies within a narrow compass.

In the year 1904 the two plaintiffs and the defendant constituted a partnership doing business in Huntington county under the firm name and style of Trexler Bros. & Co. The business in which they were engaged was farming and dealing in live stock, both horses and cattle. The firm, or the members composing it, owned a large tract of land of nearly 5,000 acres and much personal property consisting of valuable horses, herds of cattle, farming implements, etc. It appears to be a conceded fact that the two Trexler brothers owned the one-half of the land and a proportionate share of the personal property and business, the defendant Reynolds owning the remaining half.

During the same year there was in existence a limited partnership, the legal name of which was Trexler Stave & Lumber Company, Ltd. It is conceded that the defendant Reynolds was no member of this firm, had no interest in its business and no ownership in its property. Whilst the articles of association organizing this limited company were rejected by the learned trial court, and we are therefore not advised by the evidence how many persons were interested, it appears to be conceded that the two plaintiffs and their father at least were members, and further that the father, although a member of the limited company, was not a member of Trexler Bros. & Co. and had no interest in their lands, personal property or business.

This limited partnership was the owner of a sawmill, stavemill and other necessary buildings located on the large tract of land belonging to the general partnership

referred to.  It had acquired the stumpage rights to certain timber growing on that land which it cut and manufactured at its mill, paying to the owners therefor a royalty of twenty-five cents per 1,000 staves.  It is not denied that the defendant Reynolds had full knowledge of the existence of this limited partnership and of its property and business because the stumpage lease just referred to was either made or renewed while he was a member of the firm of Trexler Bros. & Co., the lessors.

With matters in this situation the two plaintiffs and the defendant entered into a written article of agreement dated January 29, 1905, and the true construction of that agreement, and particularly of a single clause in it, to be referred to, has become the principal matter of contention between the parties.

If it be, as the able counsel for the appellee insists, that it was the duty of the learned trial court to construe this written agreement, the attitude which the court should assume in undertaking to perform such a duty has been often declared by our text-writers and courts of last resort.   In Williamson et al. v. McClure, 37 Pa. 402, WOOD-WARD, Justice, said, "In order to get at the true meaning of the particular clause in controversy, we must advert to the situation and relation of the parties, the subject-matter of their agreement, and all the other provisions of the instrument.   It is a true rule of construction, said Lord Ellenborough in Barton v. Fitzgerald, 15 East, 530, that the sense and meaning of the parties in any particular part of an instrument, may be collected ex antecedentibus et consequentibus, that every part of it may be brought into action, in order to collect from the whole one uniform and consistent sense, if that may be done."   In Wright v. Monongahela Natural Gas Co., 2 Pa. Superior Ct. 219, our Brother ORLADY said, "It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the

writing. Many cases might be cited from the books to mark the distinction, too often lost sight of, between evidence to alter the language of a written instrument and evidence to define the position of the parties, and the nature and condition of the subject contracted about. So long as parties call upon courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end, courts take the language employed and apply it to the surrounding circumstances exactly as they believe the parties applied it: Barnhart v. Riddle, 29 Pa. 92; Graver v. Scott, 80 Pa. 88; Irvin v. Irvin, 142 Pa. 271."

Keeping this cardinal principle in mind, let us turn our attention to the agreement itself and see if, viewing it in the light of the circumstances that surrounded the parties at the time of its execution, there is any room for a substantial doubt as to the subject-matter with which they there undertook to deal. In the first place we observe the agreement is made "between John L. Trexler, J. F. Trexler and H. P. Reynolds, trading and doing business as Trexler Bros. & Co." This fact of itself would seem to point with considerable force to the idea that the thing about which they were to deal would be all or part of the business or property of the firm because no one but members of the firm was to join in the agreement and they were dealing in their capacity as partners. The agreement so declares. But all speculation as to the purpose and object of the agreement is put at rest by its very next clause, which states in plain and unambiguous terms the reason why the agreement was to be made. "Whereas certain differences have arisen between the members of the said copartnership, they hereby agree to dissolve the same upon the following terms." The purpose of the agreement then was the dissolution of the pre-existing partnership, and this would naturally involve some disposition of the partnership property and business. The agreement then

in an orderly way next proceeded to oblige the two Trexlers to sell to their partner Reynolds their undivided half interest in the tract of land, describing it, and then follows the clause out of which this contention has arisen, to wit, "and all their right, title and interest in and to all the personal property upon the said lands, and all their right, title and interest in and to all other personal property owned by the said firm of whatsoever character or wheresoever situate," except certain moneys due the firm which are specifically arranged for. Then follow a number of provisions for the payment of purchase money with which we have no concern. The final one of these provisions, however, required Reynolds to execute a bond and mortgage to secure a cash payment of $3,000. It is not contended but that this agreement was fully executed, so far as it related to the land and the horses, cattle, farming implements and all other personal property thereon which at that time belonged to the firm of Trexler Bros. & Co.

At the time this agreement was thus made, however, the Trexler Stave & Lumber Company had piled at its mill a large number of staves. It also owned some horses, wagons and other like property which it used in its business, bringing lumber to the mill and hauling staves to the railroad station. When the plaintiffs sought to collect the balance due on the bond for $3,000, given to them as above recited, the defendant alleged that the consideration of that note had failed in part because the Trexlers had not turned over to him all of the personal property belonging to the Trexler Stave & Lumber Company, contending that the clause of the agreement already quoted covered not only the personal property of Trexler Bros. & Co., but all other property at the time on the land, although it was not denied that such property belonged to the Stave & Lumber Company, Ltd. The learned trial court opened the judgment and permitted the defendant to make defense, and on the trial construed the agreement in accordance with the contention of the defendant and submitted to the jury the single question of ascertaining

the value of the personal property of the Stave & Lumber Company which had been located on the land when the agreement was made and which had never been turned over to the defendant.

After an attentive examination of the language of the agreement and all the circumstances admittedly existing at the time it was made, we have reached the conclusion that the interpretation of the agreement adopted by the learned trial judge was an erroneous one. In no aspect of the case, as we view it, can the agreement furnish any foundation for the defendant's claim that any part of the consideration of his bond was the acquisition by him of the title to a large amount of personal property belonging to a limited partnership which was no party to the agreement.

As we have already seen, the agreement declares that the parties to it, whose interests alone could be affected by it, were the three partners composing the firm of Trexler Bros. & Co. It further declares that its purpose was to straighten out the difficulties which had arisen among the members of that firm with relation to their own property and business, not to that of any other person. It is true that the plaintiffs agree to sell "all their right, title and interest in and to all the personal property upon the said lands, and all their right, title and interest in and to all other personal property owned by the said firm," etc. The learned court below construes the first portion of this clause as if the latter portion of it did not exist. No proper significance can be given to the expression "all other personal property owned by said firm" unless we hold that the qualifying expression "owned by said firm" applies to all of the property which was to be the subject of sale. This we think is not only the true grammatical construction of the sentence as a whole, but is the only construction that will make the entire agreement harmonious and calculated to effectuate the avowed object of those who made it. Later on the agreement provides that the stavemill and all the buildings in connection

with it, except a certain dwelling house, were reserved from the operation of the agreement. The appellee contends that if it had been the intention of the parties that the manufactured lumber and personal property of the stave company were to be excepted from the operation of the agreement, the exception would have been there noted. But this is not convincing for the simple reason that such personal property had not previously been included in any of the more general terms of the agreement. The Trexlers had previously stipulated that they would sell and convey to the defendant their undivided half of the tract of land, and this without more would have carried with it all the buildings upon the land. The mills and buildings which the stave company had a right to remove were therefore the proper subject of an exception or reservation later on in the instrument. As we have already seen, however, under a proper construction of the earlier clause relating to the personal property there was no occasion for a specific reservation of that which belonged to one who was no party to the agreement and who could not be bound by it.

The agreement still further provides that the manufacture of staves was to go on at the then present location of the mill until May 1 following the execution of the agreement on a royalty of twenty-five cents per 1,000 staves, but that after that its operations were to cease and the mill was to be removed at such time as it would be convenient to the owners to move it. Thus, while the right of the limited company to continue to use its mills and manufacture staves on the land until May 1 was expressly reserved, the defendant claims that its horses, wagons and harness, axes, saws and tools—the appliances without which its business could not be conducted—had been taken from it and transferred to him by the operation of the clause of the agreement we have quoted.

Our construction is still further strengthened when it is remembered that the two individuals who were dealing with Reynolds had no power to sell the property of the

limited partnership or pass any title to it. That could only be done by the proper officers of the limited company acting under the authority of its board of managers. Even if the agreement could be construed to be an assignment by the two Trexlers of their respective interests in the limited partnership, their transferee would take no title or right of possession to the personal property of the limited partnership. His rights as the transferee of their shares would have to be worked out in the manner provided by the act of assembly regulating the affairs of limited partnerships.

It therefore seems to us that the only defense which the defendant set up to the payment of the balance due on his bond, after allowing certain admitted credits, entirely failed, and the learned court below should have directed a verdict for this balance in favor of the plaintiffs.

This view of the case renders it unnecessary that we should deal with the assignments of error in detail. Many of them complain of the rejection of evidence tending to show, by the acts and declarations of the parties at the time, the interpretation which they themselves put upon the agreement, and if the true construction of the written instrument had been a matter of doubt, such evidence would certainly have been admissible. "When we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it:" People's Nat. Gas Company v. Wire Company, 155 Pa. 22. Many other cases could be cited to show the correctness of this principle, but it is unnecessary we should go farther.

The judgment is reversed but as the record exhibits no basis on which we can enter judgment for the plaintiffs, a venire facias de novo must be awarded.