# Henry S. Royer *v.* Ephrata Borough, Appellant.

*Road law — Widening street — Evidence of title — Act of May 23, 1887, sec. 5—Gift.*

In an action against a borough to recover damages for land taken in widening a street where it does not appear that plaintiff's title was in contest further than as it was a part of his case to be proved to enable him to recover, and where the plaintiff testifies that he had received the land as a gift from his father and had taken and maintained possession for fifteen years, and erected a house and made other improvements thereon, and that the other heirs of his father had executed a quitclaim deed to him during the pendency of the suit, the court commits no error in telling the jury that plaintiff is the owner of the land.

Plaintiff was a competent witness to prove his title, as he was not claiming adversely to his deceased father. The act of May 23, 1887, sec. 5, P. L. 159, does not make a claimant an incompetent witness merely because a former owner of the thing or contract in action is dead, but only when " his right thereto has passed to a party on the record who represents his interest."

*Road law—Widening street—Damages—Evidence—Opinion of witness.*

Where a witness is asked the value of property taken to widen a street, and answers that he " would not give fifteen hundred dollars for it," and there is no request to strike off the answer from the record, but only an exception to the answer, the Supreme Court will not reverse the judgment, although the answer itself is improper.

In an action to recover damages for land taken in widening a street, where the plaintiff in the course of his testimony had mentioned an offer for the property several years before, and the court lays down a correct rule to guide the jury in estimating the damages. the Supreme Court will not reverse the judgment because the trial judge in commenting on a part of the evidence relating to the measure of damages referred to the time of the taking, but added, " I don't mean just the day or two before, but three or five or six months before or afterwards." These words while inaccurate and doubtless inadvertent were merely intended, and must have been so understood, to prevent the jury from considering too remote a time, and to confine their attention to a period at or about the time of the taking.

In an action to recover damages for land taken in widening a street the following form of question is improper: " State in your judgment what was the damage done to the property by the widening of this street; " but where the witness expresses his judgment as to the amount of plaintiff's damages, and he is cross-examined as to his estimate of value before and after the taking, and the substance of the testimony is competent, the error does no harm, and the Supreme Court will not reverse.

Argued March 23, 1895. Appeal, No. 489, Jan. T., 1895, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1893, No. 149, on verdict for plaintiff. Before Sterrett, C. J., Williams, Mitchell, Dean and Fell, JJ. Affirmed.

Appeal from award of viewers. Before Brubaker, J.

At the trial plaintiff testified without contradiction that he had received the land as a parol gift from his father, had taken and retained possession of it for fifteen years, had erected a house and made other improvements thereon, and that the other heirs of his father had executed a quitclaim deed of the property to him after these proceedings had commenced.

The court under objection and exception admitted in evidence the quitclaim deed to plaintiff. [3]

When plaintiff was on the stand he was asked:

Q. You are the owner of this property?

Objected to by the defendant's counsel. The deed is the best evidence. Objection overruled and bill sealed for defendant.

Q. Can you give me the dimensions of it? How much front had you? A. Some sixty feet front. Q. Where did you get this title? A. From my father. Q. Did he give you a deed or make you a present of the lot? A. He made me a present of the lot. [2]

When Henry S. Musser was on the stand he was asked:

Q. What was it worth immediately after it was cut? A. I wouldn't give $1,500 for it.

The defendant's counsel objected to the answer, and asked an exception thereto. Bill of exceptions sealed for defendant. [4]

When H. C. Gemperling was on the stand he was asked:

Q. State in your judgment what was the damage done to the property by the widening of this street?

Objected to by the defendant's counsel. Objection overruled, and bill of exceptions sealed for defendant. [6]

The court charged as follows:

You have been very carefully selected by the parties to this suit for the purpose of ascertaining the amount of damages sustained by the plaintiff, Henry S. Royer, in the widening of North Church street, in the borough of Ephrata.

[It appears by the evidence before you that the plaintiff was in the possession of the premises, and is and was the owner of a certain triangular piece of ground sixty feet front on Main street and one hundred and fifty feet on Church street, with the buildings erected thereon, which has been injured by the change made in the street.] [1]   It is not contended by the borough authorities that the plaintiff has not sustained damage to the property.   It is admitted that he has sustained some damage.   The sole question, therefore, for your consideration is, to what extent was the property injured, or what is the amount of the damage to which the plaintiff is entitled.   It is solely a question of fact for you to determine from all the testimony adduced on the trial.   The only aid the court can give you in this matter is the standard of damages, or the rule of law as to the standard of damages, the measure of damages, which you should apply to the facts and circumstances of the case, as they have been given to you on the witness stand.   It is the actual damage sustained to the property as a whole, that is, the difference between the market value before and the market value after the widening of the street.   That is the true test by which you are to be governed.   In other words, the difference between what it would have brought in the market before and what after the change in the street by reason of the widening.   That difference is the actual loss sustained by the plaintiff in this case.   The market price you will have to ascertain from the general selling price in the vicinity, and not from particular sales.   Everything which gave it intrinsic or real value before, and which gave it after the street was changed, should be taken into consideration by you when you come to estimate the amount of damage.   You should, however, take into consideration the benefits, if any, to the property by reason of the borough improvement as to this street in mitigation or lessening of the damages.

You have heard the estimates made as to the market values of the property before and after the change of the street.   You will notice a difference as to the views of the actual damage. The plaintiff's testimony fixes the damage at $1,000.   One witness, I believe Mr. Gemperling, at $1,050.   This was the judgment of some six witnesses.   The defendant's witnesses fix the damage from $50.00 to $100 and to $250, and, I believe, two wit-

nesses as high as $300 and $400, and Mr. Weidman from $400 to $500. These views of the witnesses, who are evidently good and estimable citizens of the borough of Ephrata, may all be honest views, honest opinions formed from their individual knowledge of real estate values in the vicinity of this street.

It is for you to reconcile all the testimony in order to do justice to both the plaintiff and the borough. You should take into consideration the evidence as to the opportunities of the several witnesses for seeing and knowing the matters about which they testify, their interest, if any, in the result of the suit, the probability or the improbability of the truth of the several statements, in fact, all the evidence and circumstances proven at this trial.

There has been some testimony adduced before you, which came out accidentally from the plaintiff, which you ought not to take into consideration. The law is, what was the market value about the time before and after this improvement or change of the street. You will remember that the plaintiff said he was offered $2,500 for the property some years before. That would not be evidence. What he said with reference to what it was worth immediately before any improvements were made would be evidence. Therefore, you are not to consider what was offered for the property seven or eight years before. [The fair test is, what was the market value of this land, of this property before this street was widened and what was it worth after. And when I say " before," I don't mean just a day or two before, but three, or five or six months before or afterwards.] [5] The difference between these market values will be the amount of the damage sustained, and that you will find from the evidence in the case.

Verdict and judgment for plaintiff for $700. Defendant appealed.

*Errors assigned* were (2, 4, 6,) rulings in evidence, quoting the bill of exceptions; (1, 5) portions of the charge as above, quoting them.

*B. F. Davis, A. B. Hassler* with him, for appellant.—The proof of the plaintiff's title or ownership to the land was insufficient: Erie & W. V. R. R. v. Knowles, 117 Pa. 77; Poorman

v. Kilgore, 26 Pa. 365 ; Hart v. Carroll, 85 Pa. 508 ; Allison v. Burns, 107 Pa. 50.

The plaintiff was an incompetent witness to prove ownership by a parol gift: Parry v. Parry, 130 Pa. 94; act of May 23, 1887, P. L. 158; Sutherland v. Ross, 140 Pa. 385; Irwin v. Nolde, 164 Pa. 205.

The quitclaim deed was prepared after the issue was framed and even after the case was placed upon the trial list, or as the plaintiff testified, the week before the trial. We claim that it is unfair to permit a suitor to make evidence for himself after issue joined in this way : Brothers v. Mitchell, 157 Pa. 484.

It was improper to ask a witness what he would be willing to give for a property himself: Geissinger v. Hellertown Boro., 133 Pa. 525.

The jurors are to consider the matter just as if they were called in to value the injury at the moment when compensation could first be demanded ; they are to value the injury to the property without reference to the person of the owner, or the actual state of his business, and in doing that the only safe rule is to inquire, What would the property, unaffected by the obstruction, have sold for at the time the injury was committed ? What would it have sold for as affected by the injury ? The difference is the true measure of compensation : Railway Co. v. McCloskey, 110 Pa. 436 ; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 410.

The defendant also claims that he is entitled to relief because of the improper conduct of the plaintiff upon the witness stand. Without the question being asked him, he repeatedly stated from the witness stand that he had been offered $2,500 for the property in dispute before the street was widened, which he afterwards explained was several years previous thereto : Zell v. Com., 94 Pa. 258; R. R. v. Decker, 82 Pa. 119 ; R. R. v. Butler, 57 Pa. 335; Del. & Hudson Canal Co. v. Barnes, 31 Pa. 193.

*W. U. Hensel, J. Hay Brown* with him, for appellee.—A parol contract to grant lands for a good consideration, followed by occupation, possession and improvement, gives a good title for any purpose—certainly for the right to claim street damages.

The fourth assignment of error goes not to any question

asked or admitted, but to the answer given by one of the witnesses, Henry S. Musser, who, when asked the fair, proper question, " What was it worth immediately after it was cut ? " quickly answered, " I would not give $1,500 for it." The witness was not asked what he would give for it, nor did the court admit any such question, but, in a very natural, unguarded fashion, he expressed his own idea of the value of the property, after the taking, in his own way.

For an error that does no harm the Supreme Court will not reverse : Malone v. P. & R. R., 157 Pa. 442.

The exceptions taken to the judge's charge seem to be hypercritical, ,if not trivial. The last exposition of the proper rule relating to compensation for lands taken in the exercise of the right of eminent domain was by this court in Gas Light Co. v. R. R., 167 Pa. 9.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895 :

The statement declares that the plaintiff is the owner of the land in fee, and in possession, but we are not furnished with a copy of the plea, so that there is nothing before us to indicate that plaintiff's title was in contest further than as it was a part of his case to be proved to enable him to recover. For this purpose all he was required to do was to show a prima facie title, and this he did by showing a parol gift from his father, possession taken and maintained for fifteen years, the house erected and improvements made, .death of the father, and a quitclaim deed from the other heirs to himself. This would have been enough to take the case to the jury even in a direct issue on his title, and being entirely uncontradicted, fully justified the learned judge below in telling the jury that plaintiff was the owner of the land.

The case of Erie R. W. Co. v. Knowles, 117 Pa. 77, relied on by appellant as showing the strict rule as to the grade of evidence required to establish title by a parol gift between parent and child, was very different from the present. In that case the railway company had a deed from the plaintiff's mother and the title was the main issue in the contest. Both parties claimed under the same source of title, one by deed and the other by prior parol gift, and of course the evidence of the gift was required to be of the same grade as if the plaintiff was

claiming against the mother, the alleged donor, herself. In the present case there was no opposing title, and as already said plaintiff was only bound to make out a prima facie case.

Plaintiff was a competent witness to prove his title. He was not claiming adversely to his deceased father. The statute does not make a claimant an incompetent witness merely because a former owner of the thing or contract in action is dead, but only when "his right thereto has passed to a party on the record who represents his interest." The right of plaintiff's father did not pass to the appellant borough, and the latter did not represent his interest in any way. Such interest, whatever it was, would be totally unaffected by this judgment.

The answer of the witness Musser, contained in the fourth assignment was irregular and inadmissible, but it was not brought out by any improper question what he would give for the property, but was the witness's own form of expressing his opinion of what the property was worth. It is doubtful if he meant anything more than that. It would have been more regular to have struck it out, but the record does not show any direct request to the judge to do so, but only an exception to the answer, for the form of which neither the appellee nor the court was responsible. It was a mere irregularity and we are not convinced that it did appellant any harm.

The learned judge in commenting to the jury on a part of the evidence relating to the measure of damages, referred to the time of the taking, but added " I don't mean just a day or two before, but three or five or six months before or afterwards." This was an inaccurate, and no doubt an inadvertent expression, but taking it in connection with the context we do not think the jury could have been in any way misled by it. The proper rule had been carefully given to the jury in the early part of the charge. But the plaintiff in testifying had mentioned " accidentally " as the judge describes it, an offer for the property several years before. This, the jury were told explicitly was not evidence, and the judge again repeated the rule as to the value before and after the taking, and then added the words excepted to. In their connection we think they were merely intended and must have been so understood, to prevent the jury from considering too remote a time, and to confine their attention to a period at or about the taking. In that there was no error.

The last assignment is hypercritical. The witness expressed his judgment as to the amount of plaintiff's damages, and was immediately cross-examined as to his estimate of values before and after the taking. The form of the question was somewhat irregular, but the substance of the testimony was competent and the error did no harm.

Judgment affirmed.