# Ramble, Appellant, *v.* Pennsylvania Coal Company.

*Contract—Construction—Course of dealing by parties.*

1. The courts will construe a contract in accordance with the construction put upon it by the parties themselves as evidenced by their course of dealing under it.

*Contract—Assignment—Scope of assignment—Inclusio unius est exclusio alterius.*

2. Where an assignment of a contract to cut timber set forth that the things assigned were all the right and interest of the assignor in the contract, together with all buildings and machinery, certain teams and wagons, and all personal property located upon lands specified, the court will not construe the assignment as covering moneys earned by the assignor prior to the assignment, and this is especially the case where a considerable portion of such moneys were actually paid by the owner of the timber to the assignor, after the assignment had been made.

*Corporations—Powers—Contracts—Ultra vires.*

3. A corporation may not avail itself of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party, and the corporation has received the benefit of the performance.

28, (1911).]        Syllabus—Statement of Facts.

*Evidence—Witness—Competency of witness—Party dead—Assignment of contract.*

4. Where a contractor to cut and haul timber assigns his contract to another, and the assignee after having done a large amount of work reassigns the contract to the original contractor, the assignee in a suit against the owner of the timber to recover for work done during the time he held the contract, is a competent witness for himself, although at the time of the trial the original contractor was dead.

Argued March 6, 1911. Appeal, No. 9, March T., 1911, by plaintiff, from order of C. P. Wayne Co., Oct. T., 1908, No. 38, refusing to take off nonsuit in case of William J. Ramble v. Pennsylvania Coal Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit to recover a balance of ten per cent retained under a contract to cut and haul lumber. Before STAPLES, P. J., specially presiding.

At the trial when the plaintiff was on the stand the following offer was made:

We offer to prove by this witness that from May, 1901, up to the time that he entered into this verbal contract in August, he received his instructions from E. M. Beyea; that the lumber was cut and sawed and shipped, under the direction of E. M. Beyea to the Pennsylvania Coal Company and that the company received this lumber and work done by him under such directions, and that he has been paid for such work done under those directions, except the ten per cent.

Mr. O'Malley: You mean by that, that he has been paid under the terms of this contract. Do you mean to say that Beyea ever made a contract for the company, upon which this man received money?

Mr. Kimble: I mean to say that he directed the sawing, the cutting and the shipping done by Mr. Ramble and that he was paid for such services by the company; and this is for the purpose of showing agency, and the authority to bind the company in this particular line of work.

Mr. O'Malley: We object, that the testimony is immaterial, irrelevant, and incompetent for the purpose for which it is offered; that you cannot establish an authority to create liability by acts done in other respects; that it must be acts showing the creation of a liability if they attempt to establish it from custom or from other acts.

The Court: To this ruling plaintiff excepts.

Bill sealed for plaintiff. [1]

Mr. Greene: The plaintiff proposes to show by this witness, and other witnesses to be called, that at and immediately prior to the time of this agreement made with Mr. Beyea concerning the 'reassignment of the contract, Mr. Beyea made contracts on behalf of the Pennsylvania Coal Company, as its agent, for the purchase and delivery of timber and lumber and payment therefor, that he directed and controlled the cutting and the shipping and the ordering of such lumber on behalf of the Pennsylvania Coal Company. And this, as tending to show his authority as agent of the Pennsylvania Coal Company to make the contract on which plaintiff relies for the payment due him.

The court asks the plaintiff's counsel if that is the full extent of their offer.

Mr. Greene: It is the full extent of our offer at this time.

The Court: The court desires the plaintiff to make a full and complete offer of the testimony upon which they rely to establish what they allege to be the agency of Mr. Beyea and his right to make this special contract.

Mr. Greene: That is our entire testimony, so far as Mr. Beyea's conduct is concerned. We have already offered to the court Mr. Beyea's written directions concerning matters of this nature, and that is already in evidence by which he, himself, assumes to be the land agent, and we offer, also, to prove by the witness on the stand that immediately prior to the time of this contract Mr. Beyea was on the ground where the cutting was being done and the lumber being manufactured and delivered, and that Mr. Beyea gave specific verbal directions as to the cutting

of lumber by this witness on the land of the Pennsylvania Coal Company, directed its shipment and gave orders for its shipment, and that in pursuance of such cutting and shipment the Pennsylvania Coal Company paid this witness for such lumber as was so cut and shipped; and all that immediately prior to the date of this contract.

Mr. O'Malley: The work which you refer to was under the contract which has been offered in evidence.

Mr. Greene: The work which we refer to was not under the contract which has been offered in evidence but according to same terms.

Mr. O'Malley: The payments which were made were in accordance with this contract which was offered in evidence; it was the work which the plaintiff was doing under the assignment of Rauschmeier to him of this contract?

Mr. Greene: It was the work which the plaintiff was doing under the arrangement with the company by which he was to take up the work that Mr. Rauschmeier had had, under the same terms and contract, and under the same assignment of the contract, which Mr. Rauschmeier had. But this offer is only for the purpose of showing the authority of Mr. Beyea as land agent of the company and should not be confused or confounded with the terms of the work under the contract.

Mr. O'Malley: This is objected to as irrelevant, immaterial and incompetent for the purpose for which it is offered.

The Court: The objection is sustained. Unless the plaintiff has some other testimony which the court at this time calls for of some corroboration of this special contract alleged to have been made by the company, either by words, writing or deed of some kind, the court is of the opinion that the offer does not include enough to make the company responsible for the acts of E. M. Beyea as agent, or to give him sufficient authority to alter a contract which was made by the superintendent of the company in writing.

To this ruling plaintiff excepts.

Bill sealed for plaintiff. [2]

The facts appear by the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1, 2) rulings on evidence; and (3) refusal to take off nonsuit.

*Frank P. Kimble* and *Homer Greene* for appellant.— William J. Ramble was a competent witness to show the terms of his employment, the persons with whom these terms were made, the acts performed by E. M. Beyea during the progress of the work and before and after the work was done by plaintiff, as well as the work done by Frank Rauschmeier after the assignment of August 12, 1901, and the acceptance, recognition and approval of that work by the company: Danner v. Hess, 12 Pa. Dist. Rep. 246; Carpenter v. Ins. Co., 161 Pa. 9; Royer v. Ephrata Boro., 171 Pa. 429; Strause v. Braunreuter, 4 Pa. Superior Ct. 263; Roberts v. Root, 6 Pa. Dist. Rep. 586.

Where parties themselves by their acts give interpretation to their contracts, courts may usually follow such interpretation with safety: People's Nat. Gas Co. v. Braddock Wire Co., 155 Pa. 22; Coleman v. Grubb, 23 Pa. 393; Trexler v. Reynolds, 43 Pa. Superior Ct. 168.

Particular words generally modify the scope of the general words: Rhoads v. Blatt, 84 Pa. 31; Mine Hill & Schuylkill Haven R. R. Co. v. Lippincott, 86 Pa. 468; Connolly v. Dunbar, 102 Fed. Repr. 44; People v. Dayton, 50 N. Y. 681; Gwin v. Biel, 70 Indiana, 505.

*Charles P. O'Malley*, with him *Everett Warren* and *Henry A. Knapp*, for appellee.—A valid and unqualified assignment of a chose in action which has a present existence, transfers to the assignee the chose assigned—that is to say, the assignee takes the legal or equitable title to the

chose, to the same extent to which the assignor had the title. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject-matter of the assignment: Winslow v. Elliott, 50 N. C. 111; Connolly v. Dunbar, 102 Fed. Repr. 44; Quigley v. DeHaas, 82 Pa. 267; Am. Forcite Powder Mfg. Co. v. Malone, 166 Pa. 289; Shires v. O'Connor, 4 Pa. Superior Ct. 465.

Plaintiff was an incompetent witness: Rudolph v. Rudolph, 17 Pa. Superior Ct. 558; Acklin v. McCalmont Oil Co., 201 Pa. 257; Gunster v. Jessup, 196 Pa. 548; De Coursey v. Johnston, 134 Pa. 328.

OPINION BY MORRISON, J., May 11, 1911:

This is an action of assumpsit brought to recover a portion of a ten per cent reservation from the amount of money the plaintiff alleged he had earned under a certain contract with the defendant company. The court below granted a compulsory nonsuit and refused to take it off, and the plaintiff's counsel excepted and took this appeal.

We deem it necessary to here state the facts. On October 26, 1900, the Pennsylvania Coal Company entered into a written agreement with Frank Rauschmeier, by the terms of which the latter agreed to cut, haul and deliver certain lumber and trees from the land of the company to the railroad. The term of this contract was three years. Payments for work done were to be made on the fifteenth of each month for all work done the previous month, except ten per cent of such work which was to be withheld by the company till the end of the term in October, 1903. On December 1, 1900, Rauschmeier, after doing a part of the work, by assignment indorsed on the contract, transferred the same to William J. Ramble, appellant, who carried on the work under the contract until August 3, 1901, when E. M. Beyea, designated as land agent of the company, notified Ramble that the company was dissatisfied with his work and the quantity of lumber delivered. Ramble went to the general office of the com-

pany in Dunmore, which was in charge of E. M. Beyea, and told Mr. Beyea that the company had failed to pay according to the contract and that the company was about $4,000 in arrears. There was evidence for the jury that it was agreed by and between Mr. Beyea, land agent for the company, and the appellant, that the latter would assign the contract back to Rauschmeier and the company would pay to Ramble within a short time all moneys due him for work, and the ten per cent withheld as aforesaid should be paid to him in October, 1903, at the termination of the contract. On August 12, 1901, the said E. M. Beyea, by writing, granted permission to Ramble to assign the contract, and the same day the written assignment of the contract in pursuance of said parol agreement was executed and delivered by William J. Ramble to Frank Rauschmeier. After said last assignment the company from time to time, extending up to October 2, 1901, made payments to Ramble for moneys due him for work on the job prior to said assignment. On July 23, 1904, Ramble received through Rauschmeier $525, payment on account of the said ten per cent, and brought this suit on November 13, 1908, to recover the balance due Ramble from the defendant, including interest, amounting to $509.54.

As the assignment of the contract by Ramble back to Frank Rauschmeier is an important paper in the case, we here copy it entire:

"Hoadleys, Pa., Aug. 12, 1901.

"In consideration of $3500, I hereby sell, assign, transfer and set over to Frank Rauschmeier of Mt. Cobb, Pa., all my right and interest in and to a certain contract, dated October 26, 1900, between the Pennsylvania Coal Company and Frank Rauschmeier, and by said Rauschmeier assigned on December 1, 1900, to William J. Ramble, his heirs and assigns, to be carried out by him as within provided; together with all the buildings and machinery, certain teams and wagons and all personal property whatever, located upon the lands of the Pennsylvania Coal Co., at what is known as the Foot of Old No. 16, also

Purdytown Road, Wayne County, Pa., as mutually agreed upon.

W. J. RAMBLE."

"In presence of Wm. J. Hand."

It would seem that the assignment from Frank Rauschmeier to Wm. J. Ramble of December 1, 1900, with the written approval of the defendant company, vested in Ramble all the rights and subjected him to all the penalties mentioned in the original contract, and the contract from that date was wholly carried on between Wm. J. Ramble and the defendant company.

There is plenty of evidence from which the jury could have found that Ramble proceeded with the work under the terms of the contract and on August 6, 1901, he had earned about $9,633.47. Of this sum the company had, up to that date, paid to him $5,631.02, and there was yet due and unpaid by the company about $3,439, exclusive of the ten per cent reserved, which amounted to $963.34. Ramble claimed that of said balance of $3,439.13 a considerable portion had been due for several months, and the withholding of this money from him by the company had necessarily delayed the prosecution of the job.

On August 6, 1901, E. M. Beyea, land agent of the company, wrote the letter of that date which was in evidence at the trial, notifying Ramble that the company would exercise its option contained in the sixth clause of the contract, as follows:

"Clause 6th. It is also understood and agreed that if the said party of the second part does not fulfill this agreement in every particular, or fails to do the work to the entire satisfaction of the said party of the first part, this agreement becomes null and void after ten days' notice from the said party of the first part to the said party of the second part. . . ."

On receipt of this letter Ramble went to Dunmore to the general office of the company defendant, in charge of E. M. Beyea, and it was agreed that the plaintiff was to

reassign the contract to Frank Rauschmeier and the company was to pay the plaintiff within a short time what was due him for all work done and to pay him the ten per cent withheld, on the work he had performed, amounting to $963.34, at the termination of the contract.

The plaintiff's counsel do not contend that the oral contract with the land agent, just referred to, created any new liability on the part of the company. The money had been earned by and was due to the plaintiff under the terms of his employment. The agent asked that plaintiff assign the contract, to which the latter assented on the express promise that the company would not insist on a forfeiture of the ten per cent under clause six of the contract. The plaintiff's contention is that he had performed the work and that constituted the obligation of the defendant to pay. By the oral agreement the plaintiff quit his job and the company agreed that it would not declare a forfeiture of the ten per cent under the contract. Pursuant to this oral agreement, E. M. Beyea wrote a letter which was in evidence giving the assent of the company to the assignment of the contract by the plaintiff, and on August 12, 1901, the written assignment above quoted was executed by plaintiff and delivered to Rauschmeier. And thereupon the defendant company so far ratified the arrangement that it paid to the plaintiff the balance of $3,439.13 by sundry payments, the last installment of which was not paid until October 2, 1901.

The plaintiff sought to establish at the trial that E. M. Beyea was the land agent of the defendant company; that he had full control over its lumber business, buying, selling, directing shipments, and generally superintending the lumbering interests of the defendant company. That having said power he could terminate any lumber contract, wholly or conditionally, for the company. We are of opinion that the money due the plaintiff was by reason of the labor rendered by him. Beyea, acting as agent for the company, sought to terminate the contract conditionally, upon stipulated terms. These conditions were accepted

by the plaintiff and the assignment from the plaintiff to Rauschmeier was approved in writing by Beyea in the name of the company, and the latter ratified the assignment by its acceptance of subsequent service under said assigned contract by Rauschmeier and by paying the plaintiff the balance of all the money due him as agreed with Beyea, except the sum claimed in this suit. It should be here noted that the company not only paid the plaintiff the $3,439.13 agreed to be paid him by Beyea, but also paid or caused to be paid to the plaintiff, through Rauschmeier, all of the ten per cent, except the balance of it claimed in this suit.

In the light of the action of the parties in respect of the effect of the assignment by plaintiff to Rauschmeier on August 12, 1901, we are quite clear that said assignment was not intended to transfer to Rauschmeier any money then due Ramble for work done for the defendant while he held the contract. We think the oral agreement leading up to the assignment shows this, but if there is any doubt as to the proper construction of the assignment on that question, the conduct of the defendant company in paying the plaintiff at four different times after the date of the assignment clearly shows that the present contention of the defendant that the assignment carried to Rauschmeier all of plaintiff's interest under the contract, including the money that he had earned and the ten per cent reservation, is an afterthought. Surely the defendant company put no such construction on the assignment or it would not have paid to the plaintiff the following sums of money, to wit: August 13, 1901, $769.95; August 14, 1901, $1,176.50; September 3, 1901, $575.80 and October 2, 1901, $916.88, amounting to $3,439.13, which payments on the part of the company to Ramble ought effectually to close its mouth from alleging that all moneys due Ramble at the time of his assignment passed by virtue thereof to Rauschmeier. In addition to the above payments the plaintiff contended that on July 23, 1904, he received $525 on account of the ten per cent reserved by the company and this was long

after he had executed and delivered the assignment to Rauschmeier. We understand the defendant's counsel to contend that the latter payment was not made by the defendant company but by Rauschmeier. It is a very unreasonable contention that the latter would pay plaintiff $525 out of his own pocket, and while it is true that the money was paid on the check of Rauschmeier, any reasonable view of the transaction would seem to indicate that he paid it for the defendant company. On any view of this transaction, we are of opinion that whether said payment was really that of the defendant company was a question of fact for a jury.

It has long been considered safe to construe a contract in accordance with the construction put upon it by the parties themselves as evidenced by their course of dealing under it: People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Coleman v. Grubb, 23 Pa. 393. See Kaul v. Weed, 203 Pa. 586, 593; Trexler v. Reynolds, 43 Pa. Superior Ct. 168. But in addition to this we are not convinced that a proper construction of the assignment from Ramble to Rauschmeier would carry with it the money that Ramble had earned at that time. The construction of this assignment of August 12, 1901, is for the court, and the enumeration of certain specified articles of personal property in the body of the assignment warrants the application of the familiar rule—inclusio unius est exclusio alterius. The fact that the assignment enumerates various articles intended to be transferred by it would indicate that the assignor did not intend to include wages already due him, and when the words "all my right and interest in and to a certain contract" are immediately followed by the particular words "together with all buildings and machinery, certain teams and wagons and all personal property located upon lands of the Pennsylvania Coal Company," etc., we are of the opinion that said assignment standing alone, without the oral agreement, does not warrant a court in holding that it included money then due the assignor for services performed under said contract.

If E. M. Beyea had no authority to make the oral agreement with Ramble for the payment to him of the money due for logs and timber delivered and the ten per cent held back, then it is difficult for us to see that he had authority to declare a cancellation of the written contract involving a forfeiture of the ten per cent and authority to permit the assignment back to Rauschmeier, without which permission the assignment was not valid. Even if the defendant company had not been notified of the alleged parol agreement made by the plaintiff with Beyea to pay him the $9,633.47 and the ten per cent reserved, the company cannot be permitted to take the benefit of the act of its agent in compelling plaintiff to assign his contract to Rauschmeier and then deny its own obligation arising thereunder.

"A corporation may not avail itself of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance.

"It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act and at the same time repudiate his authority:" Presbyterian Board v. Gilbee, 212 Pa. 310; Pannebaker v. Tuscarora V. R. R. Co., 219 Pa. 60.

The plaintiff's counsel contend, "that he was a competent witness to show the terms of his employment, the persons with whom these terms were made, the acts performed by E. M. Beyea during the progress of the work and before and after the work was done by plaintiff, as well as the work done by Rauschmeier after the assignment of August 12, 1901, and the acceptance, recognition and approval of that work by the company. And the plaintiff should have been allowed to testify freely on any of these points, notwithstanding the death of Rauschmeier in May, 1906, and before the bringing of this suit." The offer of the plaintiff's testimony was to support his right to recover against the defendant for work performed while Rauschmeier's interest in the contract was vested

in the plaintiff by written assignment. The action was not against the estate of Rauschmeier nor would the plaintiff's recovery affect that estate. The question at issue was the liability of the defendant company to pay the plaintiff so much of the ten per cent reserved as had not been paid at the bringing of the suit. We are of opinion that the plaintiff was a competent witness to testify in accordance with the above contention of his counsel.

In Carpenter v. U. S. Life Insurance Co., 161 Pa. 9, it was held that the assignee of a policy of insurance was not incompetent under the Act of May 23, 1887, sec. 5, clause E, P. L. 159, in a suit against the insurance company, to testify to facts showing the relations between herself and the insured in the latter's lifetime.

In Royer v. Ephrata Borough, 171 Pa. 429, the Supreme Court held: "Plaintiff was a competent witness to prove his title. He was not claiming adversely to his deceased father. The statute does not make a claimant an incompetent witness merely because a former owner of the thing or contract in action is dead, but only where 'his right thereto has passed to a party on the record who represents his interest.'"

We regard the opinion of this court in Strause v. Braunreuter, 4 Pa. Superior Ct. 263, as supporting the plaintiff's right to testify in the present case, in accordance with his counsel's contention.

The Rauschmeier estate, in the question being tried in this action, was not interested, and, therefore, the death of Rauschmeier did not disqualify William Ramble as a witness in an action to recover compensation for services rendered by himself to the Pennsylvania Coal Company, unless it should be held that Ramble by his written assignment of August 12, 1901, transferred all his past earnings to Rauschmeier. But we have seen that the defendant company by the subsequent payments made to William J. Ramble on August 13, 1901, August 14, 1901, September 2, 1901, and October 2, 1901, amounting to $3,439.13, fully accepted the true interpretation and construction of

that written assignment. That it did not nor was it intended to pass to Rauschmeier any moneys for work done by Ramble.

In our opinion the testimony offered and received, together with that offered and rejected, the latter being quoted in the assignments of error, made a prima facie case for the plaintiff, without proof of the oral agreement between Ramble and E. M. Beyea, and without proof of Beyea's authority to make such an agreement. The conduct of the defendant company in making the five several payments to Ramble after he made the assignment of August 12, 1901, tends to ratify and establish such a contract as the plaintiff contended for without formal legal proof in the first instance of the existence of the contract.

It will of course be understood that in reciting "facts" in this opinion, we only mean such as were made out prima facie by the proofs received and offered. In our opinion, the case should have been submitted to the jury.

The assignments of error are sustained and the judgment is reversed with a procedendo.