## Williams, Appellant, *v.* Lucas.

Argued November 18, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*D. Arthur Magaziner,* with him *Mayer, Magaziner & Brunswick,* for appellant.

*Russell C. Gourley,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

This is an action brought under Procedural Rule 1061 to quiet title to premises known as 1710 Point Breeze Avenue, Philadelphia. Plaintiff, Mrs. Irma E. Williams, (who remarried after this action was brought and is now known as Irma E. Bohn, wife of Henry E. Bohn), became the owner of the property in 1944. In 1946 she deeded it to Michael Lukas as trustee. The terms of the trust, which appear in the deed, are that plaintiff and Peter Super, or the survivor of them, might occupy the property during their lives; that the trustee could sell only at the written direction of plaintiff and Super; that upon the death of either party the trustee could sell at the direction of the survivor after paying half the value to the heirs of the deceased party; and that upon the death of the survivor—presumably if no other disposition had been made—one half share should go to the heirs of the plaintiff and the other half to the heirs of Super.

Super died intestate on July 23, 1951, leaving his wife, Anna Super, a feeble-minded person, a son, Peter Super, Jr., and a daughter, Anna (intermarried with John Homa), as his only heirs and next of kin. The defendants named in the action are the two children, the guardian of the widow, Michael Lucas, and the administrator of Peter Super's estate. Before the trial commenced, plaintiff filed a disclaimer as to the administrator who was thereupon dropped as a party defendant. The defendant, Michael Lukas, the trustee in the deed, filed no answer and the plaintiff filed an order for judgment with the prothonotary, the pro-

priety and effect of which the court took under advisement. See Goodrich-Amram Procedural Rules Service, §1065-6, §1066(a)-1. The case proceeded to trial as to all defendants excepting the administrator.

Plaintiff sought a judgment or decree declaring the deed executed by her invalid and cancelled, and barring defendants from asserting any right, title or interest in the property conveyed, alleging that there was no consideration for the deed and she was induced to execute and deliver it by duress, coercion and fraud practiced by Peter Super. All of the defendants excepting Lukas filed an answer denying the allegations of the complaint and also averring that the deed was made in recognition of monies alleged to have been invested by Super in the property and to protect him for advances which he had made. The jury rendered a verdict for the defendants. The plaintiff filed motions for judgment n.o.v. and for a new trial, both of which were overruled and final judgment entered on the verdict. Plaintiff appeals therefrom.

The plaintiff lived in the premises involved. In 1944 Peter Super became a lodger in plaintiff's home and lived there until his death in 1951. At the time he came to plaintiff's house he was about 47 years old, married, with two grown children and a wife in a mental institution. Plaintiff was a widow about 8 years older and conducted a beauty parlor at the residence.

In support of plaintiff's contention that the deed in question was executed by her as the result of duress, coercion and fraud, plaintiff called 15 witnesses from whose testimony it appeared that Super was a ne'er-do-well and an alcoholic; that when they saw him, he was generally drunk; that he couldn't keep a job and was dependent upon plaintiff for money; that both before and after the execution of the deed on numerous

occasions he made threats of bodily harm to the plaintiff, generally because she would not give him money; that when some of these threats were made, Super had a mallet or hammer in his hand. One witness testified that when Super went after the plaintiff with a mallet "to hit her over the head", plaintiff's only comment was, "Pete, if you hit do a good job.". One witness testified that he threatened to kill plaintiff with a hammer if she wouldn't put half the property in his name and that plaintiff said she wouldn't do so and just walked away. There was no testimony that Super ever struck or harmed the plaintiff nor that she was ever intimidated by or feared him; on the other hand there was testimony from which the jury could find that she was at all times the mistress of her own affairs and not dominated by him. The witnesses did not specify with exactness the times when any of the threats were made. Of importance is the fact that none of the threats was immediately related to the time of the execution of the deed. No witness was called or testimony adduced as to the circumstances under which the deed was signed or the conduct of the parties at that time. The deed was witnessed by a lawyer and his wife, the latter taking plaintiff's acknowledgment. Plaintiff was not permitted to testify with respect to the transaction nor to any matter occurring before Super's death, the court ruling that she was incompetent under the Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 PS §322. This ruling is assigned as error and will be hereinafter considered.

Plaintiff's proof of fraud consisted of some vague indefinite testimony by a witness as to a conversation she overheard between plaintiff and Super during which Super said he would ". . . take over the beauty shop and she wouldn't have to work no more . . .". The witness asked, "Can I tell you about another idea he

got later?". Plaintiff's counsel asked, "Does it relate to the house?". The witness said "Yes", and then testified: "If she would turn the house over to him, he would take over this beauty shop and he wanted to put a launderette up, he wanted Betty to sell out her business, sell everything, and invest that money into a launderette and he would run the launderette and take care of her, being he was a mechanic and he could repair the machines and stuff, see.". It does not clearly appear that the witness meant that she heard such statement made to the plaintiff or whether it was merely made to the witness in the absence of the plaintiff. In any event there was nothing to show that plaintiff relied on any such promise and the testimony fell far short of establishing a definite undertaking on Super's part or, if considered such, that it was a promise fraudulently made, with no intention of fulfillment.

The defendants called only one witness, John Homa, who testified favorably as to Super's conduct and habits prior to November, 1940, which had little if any relevancy. No attempt was made to prove that the deed was executed in recognition of monies alleged in their answer to have been invested by Super in the property, the defendants evidently being satisfied that they could persuade the jury that no duress, coercion or fraud had been practiced upon the plaintiff. The defendants were not obliged to resort to any affirmative defense alleged by them, as contended by plaintiff, but could, if they chose, rely on the weakness of plaintiff's case.

The court instructed the jury that the burden was upon plaintiff to establish by clear and precise evidence that she was induced to execute the deed by duress, coercion and fraud. Appellant has no complaint in this regard but contends she established such overmastering influence upon her by Super that the burden shifted and was upon defendants to show that the deed was

her free, voluntary and intelligent act. As appears in the cases cited by appellant, such rule applies in cases of confidential relationship, fraud, weakness of mind and gross deception (see *Teats v. Anderson et ux.*, 358 Pa. 523, 58 A. 2d 31) and a careful reading of all the testimony in the instant case clearly discloses that it is not one containing any of such factors. Nor was the case pleaded or tried on any such theory.

Upon consideration of all the evidence introduced, we are clearly of the opinion that the court properly dismissed plaintiff's motion for judgment n.o.v. However, we are obliged to grant a new trial because of the court's ruling that under the Act of 1887 the plaintiff was incompetent to testify to any facts occurring prior to Super's death. Section 5, cl. (e) of the Act of 1887 provides: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, . . .".

The instant proceeding was instituted to quiet title. The "thing" in action was the deed from plaintiff to Lukas in trust. In support of her title in fee simple to the whole of the property conveyed, plaintiff claimed the deed to be invalid. The widow (by her guardian) and two children of Peter Super asserted the validity of the deed and claimed under its provisions a half interest in the corpus of the trust.

Super's administrator was not a party to the record because of the disclaimer filed by plaintiff before

the jury was sworn. Plaintiff and Lukas, the trustee, were both alive at the time of trial. Super, who had a beneficial interest under the deed, was dead, but his interest was a life interest only which ceased to exist upon his death. Nothing passed *from him* to the defendants. In the opinion of the court below it is stated, ". . . the half interest which plaintiff claims passed by Super's death to his heirs, and she attacks the very instrument by which she *and Super* gave them their interest.". (Emphasis supplied). Super had no interest to convey. Plaintiff was the sole owner of the property and the grantor in the deed of trust. In a sense it is true, as the lower court says, that the half interest "passed by Super's death to his heirs", but it passed to them as remaindermen under the provisions of the deed and not from him, as he had only a life interest. The defendants acquired a half interest *in the corpus* in their own right and they do not "represent" any right or interest of the decedent. Therefore, the Act of 1887 was not applicable and the plaintiff should have been permitted to testify. A surviving or adverse party is not disqualified unless it appears that the deceased actually had some right to the thing in controversy, which right passed to a party on the record who represents his interest. See *Gritz v. Gritz et al.,* 336 Pa. 161, 7 A. 2d 1; *Henry S. Royer v. Ephrata Borough,* 171 Pa. 429, 33 A. 361; *Hamill v. Supreme Council of the Royal Arcanum,* 152 Pa. 537, 25 A. 645.

Since this case must be retried, we add that we have considered but find no merit in appellant's other assignments of error.

Judgment reversed and a new trial granted.